## ALBERT E. DANIELS *versus* ALFRED POND.

If a tenant at will commits waste, it is a determination of the will, and trespass *quare clausum fregit* may be maintained against him by the reversioner.

An outgoing tenant at will of a farm, has no right, in the absence of any express stipulation, to remove the manure made on the farm in the ordinary course of husbandry, and consisting of the collections from the stable and barn-yard, or of composts formed by the admixture of these with other substances taken from the farm; and if he sell such manure to be removed, and the vendee have notice of the title of the landlord, the sale vests no property in the vendee, and trespass will lie against him at the suit of the landlord, for taking the manure. But this rule does not apply to manure made in a livery stable, or in any manner not connected with agriculture or in a course of husbandry.

The tenant at will of a farm has a qualified possession of the manure made thereon in the ordinary course of husbandry for the purpose of using it on the farm; but if he sells it, the right of possession vests in the lessor, and the lessor may maintain trespass *de bonis asportatis* against the vendee for removing it

TRESPASS. The first count was for breaking a close and carrying away a quantity of manure. The second was *de bonis asportatis* merely, for the same property.

By an agreed statement of facts, it appeared, that the farm from which the manure was taken by the defendant, was formerly owned by Ira Blake, and was conveyed by him to the plaintiff in December, 1836 ; that at the time of this convey-

ance, one Nason was tenant of the farm, under a parol lease from Blake, by the terms of which he was to hold from the 1st of April, 1836, to the 1st of April, 1837 ; that a part of the manure in question had accumulated at one end of the barn, having been thrown from the stable where Nason's cattle had been fed ; that the other part had accumulated in the barn-yard, being composed of hay, &c., that grew on the farm, and of loam or other earth therefrom carried . by Nason into the barn-yard ; that Nason had removed this part of the manure from the barn-yard to the side of a contiguous highway in the autumn or winter of 1836 ; and that this highway was over land of which the fee originally belonged to Blake, and was conveyed by him to the plaintiff, as before mentioned.

It further appeared, that in March, 1837, Nason sold the manure in question, by auction, and that the purchaser was to take . it away before the 1st of April ; that before the sale, notice was publicly given, at the request of Blake and also of the plaintiff, that they considered the manure to belong to the plaintiff, and that it would be claimed by him of any one who should undertake to buy it ; and that the defendant, with such notice, bid off the manure at the auction, and before the 1st of April, 1837, entered upon the enclosed grounds, and carried away that which was at the barn windows, and also carried away that which was by the side of the highway.

If upon these facts the plaintiff was entitled to recover, judgment was to be rendered in his favor, for a certain sum ; otherwise he was to become nonsuit.

The case was argued in writing.

*Metcalf*, for the plaintiff. Trespass lies against a tenant at will for *waste ;* and the act complained of in this case, may be considered waste. It seems to follow, that trespass will, *a fortiori*, lie against a third person acting under such tenant in the commission of waste. Savile, 84, *pl.* 164 ; Co. Litt. 57 *a ; Walgrave* v. *Somerset*, Gouldsb. 72 ; *Phillips* v. *Covert*, 7 Johns. R. 1 ; *Treat* v. *Peck*, 5 Connect. R. 280.

Nason was tenant at will when he sold the manure, and when the alleged trespass was committed ; Revised Stat. *c.* 59, § 29 ; and the plaintiff may therefore maintain trespass *quare clausum*, although Nason was in possession. *Starr* v. *Jackson,*

11 Mass. R. 519 ; *Lienow* v. *Ritchie*, 8 Pick. 235. The authorities to be cited will show, that the injury set forth in the writ, was to the inheritance, and so within the case of *Starr* v. *Jackson.* This point, however, is not very important, as it touches the first count only.

The manure which was on the premises conveyed to the plaintiff at the date of the deed, became his, as between him and the grantor, by virtue of the conveyance. *Stone* v. *Proctor*, 2 Chipman's R. 108 ; *Kittredge* v. *Woods*, 3 N. Hampsh. R. 503. As between Nason and his landlord, whether Blake or the plaintiff, Nason was not entitled to the manure, though it were made by his own cattle, and from his own fodder. *Lassell* v. *Reed*, 6 Greenl. 222 ; *Middlebrook* v. *Corwin*, 15 Wendell, 169.

The present case is stronger as to the manure taken from the highway ; for that was composed of the soil of the farm, which no tenant has a right to carry away. The matter mixed with that soil by Nason could not be separated from it ; and the whole, even if there were no other ground for the plaintiff's claim, belonged to the owner of the land. *Anon.* Popham, 38 ; *Warde* v. *Aeyre*, 2 Bulstr. 323 ; *Brackenridge* v. *Holland*, 2 Blackford's (Indiana) R. 377.

But it is not necessary to insist, that all the manure passed to the plaintiff by the conveyance of the land, in order to maintain this action. It will be noticed, that nearly all the manure at the barn windows must have been accumulated there after the plaintiff purchased the farm ; and if the foregoing decisions are evidence of the law, that part of the manure never was Nason's property as between him and the plaintiff. The same suggestion may apply, though less forcibly, to the manure that was by the wayside. That portion of it, being part of the soil itself, must have passed by the deed, in the same manner as would heaps of soil, which Nason might have collected on any other part of the land described in the deed.

See *Pinkham* v. *Gear*, 3 New Hampsh. R. 484 ; *Parsons* v. *Camp*, 11 Connect. R. 525.

*Merrick*, for the defendant. The plaintiff cannot maintain trespass *quare clausum*, because the acts done were not an injury to the freehold. Neither will trespass *de bonis asportatis*

Daniels
*v.*
Pond.

Daniels
v.
Pond.

lie, because, at the time of the taking and carrying away of the manure, he had neither the possession, nor the right of possession. *Vincent* v. *Cornell*, 13 Pick. 294 ; *Walcott* v. *Pomeroy*, 2 Pick. 121 ; *Wheeler* v. *Train*, 3 Pick. 255. All the cases seem to admit, that manure is personal property ; but for the sake of convenience, and the good of agriculture, some of the judges have determined, that it passes with the land by a deed of conveyance of the latter, and that, as between landlord and tenant, the former is entitled to it without contract or covenant to that effect. It is difficult to see upon what principle this can be. Agriculture will be equally promoted, whether the manure be expended upon the farm on which it is made or upon another. Manure is like all other productions of a farm, the result of growth, labor and cultivation, and when matured, is, like them, the property of the tenant. Thus, it may be attached as his property. *Staples* v. *Emery*, 7 Greenl. 201. And if it may be attached and thus applied to the payment of his debts, surely he may sell it and convert it into money for the same purpose. If he can do so, it must be because it is his ; and if it be his, his landlord cannot, by conveying the land, deprive him of his property. There can be no distinction between the different parcels of this manure. It is all *made*, and therefore is all personal property. That a portion of it was once part of the soil of the farm can make no difference. The change has destroyed its identity. See, in addition to the cases cited by the plaintiff, *Yearworth* v. *Pierce*, Alleyn, 31.

The right of the tenant to remove many things during the existence of his tenancy, which, if suffered to remain till after the surrender of the estate, would pass to the landlord, has been repeatedly recognised. It would probably be so with respect to manure ; and the same rule would seem to be as applicable to this subject as to many others to which judicial decisions have applied it. *Gaffield* v. *Hapgood*, 17 Pick. 192, and cases there cited.

*Metcalf, in reply.* The cases cited for the defendant, to show, that trespass *de bonis asportatis* will not lie, if applicable at all, and if not a *petitio principii*, would seem to be sufficiently answered by *Farrant* v. *Thompson*, 5 Barn. & Ald. 826, and *Ayer* v. *Bartlett*, 9 Pick. 160

If it be conceded by the plaintiff, that the manure *might have been* attached for Nason's debts, the defendant gains nothing by the concession. For a chose in action &c. belonging to a wife, may be applied to satisfy the husband's debts, though he has not reduced it to possession. If, however, he die, not having so reduced it, his creditors cannot have the avails of it, but it will survive to the widow. This seems to be analogous to the supposed right of Nason's creditors, in this case.

SHAW C. J. drew up the opinion of the Court. Two questions arise in the present case, the first, as to the form, the second, as to the plaintiff's right of action.

1. The tenant in this case, was tenant at will ; and it seems a well settled rule, that if a tenant at will commits waste, it is a determination of the will and an act of trespass, and that *quare clausum fregit* will lie by the reversioner. *Phillips* v. *Covert*, 7 Johns. R. 1 ; *Suffern* v. *Townsend*, 9 Johns. R. 35.

It was further contended, that the plaintiff had not such a possession of the manure, as would enable him to maintain trespass *de bonis asportatis*.

The plaintiff, by the purchase, had become owner of the farm with all its incidents, subject only to the tenancy at will of Nason. If the manure became the plaintiff's at all, it was as part of and incident to the realty. Nason had a qualified possession of it for a special purpose only, that is, to be used upon the farm. The moment he sold it, the act was an abandonment of that special purpose, he parted with his only right to the possession or custody of it, it vested in the plaintiff as owner of the freehold, and the right of possession followed the right of property. *Farrant* v. *Thompson*, 5 Barn. & Ald. 826 ; *Walcott* v. *Pomeroy*, 2 Pick. 121 ; *Ayer* v. *Bartlett*, 9 Pick. 156. As the tenant's sale conveyed no title to the defendant, the action of trespass well lies against him, if the property was the plaintiff's.

2. The Court are of opinion, that manure made on a farm, occupied by a tenant at will or for years, in the ordinary course of husbandry, consisting of the collections from the stable and barn-yard, or of composts formed by an admixture of these with soil or other substances, is, by usage, practice and the general understanding, so attached to, and connected with the

Daniels
*v.*
Pond.

realty, that, in the absence of any express stipulation on the subject, an outgoing tenant has no right to remove the manure thus collected, or sell it to be removed, and that such removal is a tort, for which the landlord may have redress ; and such sale will vest no property in the vendee.  *Lassell v. Reed*, 6 Greenl. 222 ; *Kittredge* v. *Woods*, 3 New Hampsh. R. 503 The authority of the first of these cases is supposed to be impaired by a subsequent one, decided by the same court, *Staples* v. *Emery*, 7 Greenl. 201.   But the court do not profess to call in question the correctness of their former decision, but, on the contrary, affirm it and distinguish the latter case from it.

The rule here adopted will not be considered as applying to manure made in a livery stable, or in any manner not connected with agriculture or in a course of husbandry.

In the present case, the defendant had notice, both from Blake and from the plaintiff, of the claim and title of the plaintiff to the manure, before the sale ; he therefore stands in the same situation with Nason, neither better nor worse.

*Judgment for the plaintiff*